United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREMETRICS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>ATOMIC PARK.COM, LLC, a/k/a ATOMICPARK.COM, and DOES 1 though 20, inclusive,<br><br>    Defendants.<br>_____/ | No. C-04-0222 EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF DAMAGES**<br>**(Docket No. 58)** |

    Plaintiff Coremetrics, Inc. brought this action against Defendant AtomicPark, LLC in California state court alleging, *inter alia*, breach of contract. Subsequently, AtomicPark removed the action to this Court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1441(b). Pending before the Court is AtomicPark's motion for partial summary judgment on the issue of damages should Coremetrics prevail in the liability phase of this case.[1] The issues to be decided are (1) whether the parties' contract bars Coremetrics from recovering lost profits as direct damages and (2) whether Coremetrics is limited to recovery of actual losses.

    Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby DENIES the motion.

---

[1] The Court shall cite to AtomicPark's motion for partial summary judgment as "Mot.," Coremetrics' opposition to AtomicPark's motion as "Opp'n" and AtomicPark's reply to Coremetrics' opposition as "Reply."

## I. FACTUAL AND PROCEDURAL BACKGROUND

Coremetrics is a Delaware corporation, authorized to do business in California. *See* Compl. ¶ 1. According to Coremetrics, it is "the leading provider of Web analytic services[,] [helping] companies increase their eBusiness profitability by capturing and analyzing all online visitor and customer interactions." *Id.*

AtomicPark is a Wisconsin corporation with its principal place of business in Wisconsin. *See* Not. of Removal ¶ 3. AtomicPark is in the business of selling computer software over the Internet.

At some point in time, Coremetrics and AtomicPark entered into an integrated, written agreement.[2] The contract stated that Coremetrics would provide AtomicPark with certain internet services for $8,000 per month (for twelve months) plus a one-time $5,000 "implementation fee." The total contract price was $101,000. The contract contains a choice-of-law provision, stating in full that "[t]he Agreement is governed in all respects by the laws of the State of New York without giving effect to its conflict of laws principles." *See* Mot., Ex. 3. The contract also contains a "Limitations on Damages" clause which states in pertinent part:

> IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION DAMAGES FOR LOSS OF PROFITS, LOST BUSINESS, LOST DATA, OR LOSSES FROM INTERRUPTION, TERMINATION, OR FAILED OPERATION OF THE INTERNET OR THIRD-PARTY TELECOMMUNICATION SERVICES INCURRED BY THE OTHER PARTY OR ANY THIRD PARTY, WHETHER IN AN ACTION IN CONTRACT OR TORT, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. Except pursuant to a party's obligations set forth in section 7 above or for any breach of its obligations under sections 3, 4, 6 or 9 of these Terms and Conditions, neither party's aggregate and cumulative liability for damages under the Agreement shall exceed the amount of fees paid by Client under the Agreement.

---

[2] Based on the parties' papers (including evidence submitted therewith), it is not clear what the exact date of the contract was. For purposes of the motion for partial summary judgment, however, the exact contract date is immaterial.

United States District Court
For the Northern District of California

1  *Id.* (emphasis in original.).

2  It is undisputed that after initially pushing back implementation of Coremetrics' services, AtomicPark eventually informed Coremetrics that implementation would be delayed indefinitely due to AtomicPark's financial difficulties. Subsequently, Coremetrics filed this lawsuit seeking, *inter alia*, recovery of the $101,000 contract price. It is undisputed that the services were never rendered.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where the plaintiff has the ultimate burden of proof, it may prevail on a motion for summary judgment only if it affirmatively demonstrates that there is no genuine dispute as to every essential element of its claim. *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). In contrast, where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. PARTIES' ARGUMENTS

AtomicPark argues that it is entitled to judgment as a matter of law on the issue of damages if Coremetrics prevails in the liability phase of this case. AtomicPark makes, in essence, three arguments regarding the possible measure of damages: the contract price, "lost profits," and actual losses.

Regarding contract price, AtomicPark argues that Coremetrics cannot recover the full contract price of $101,000 as a matter of California law because Coremetrics did not suffer any damage, *see* Mot. at 10, and because "a plaintiff's maximum damage recovery [is] the full contract price less all costs that the injured party would have incurred in rendering its performance," *see* Mot. at 11. Relying on the Second Restatement of Contracts, Coremetrics argues that it is entitled to what it bargained for: $101,000.

Regarding "lost profits," AtomicPark makes two arguments. First, it contends that the Limitations on Damages clause bars Coremetrics from recovering its lost profits, or "the profits or benefits [Coremetrics] would have would have obtained by performance." *See* Mot. at 11. In response, Coremetrics asserts that, although the contract can be reasonably interpreted as barring *indirect or consequential* damages, including lost profits, the contract says nothing about barring lost profits as a measure of *direct* damages which flow directly from AtomicPark's breach. *See* Opp'n at 8. Second, AtomicPark argues that Coremetrics cannot recover its lost profits because it was "exceptionally busy" with other clients, "readily inserted another client into the scheduling gap created when AtomicPark's implementation was rescheduled and then indefinitely deferred," and therefore suffered no damage. *See* Mot. at 4. As to this argument, Coremetrics contends that it was not required to find a substitute transaction and "was willing and able to provide AtomicPark with the Services at all times." *See* Opp'n at 14.

Finally, regarding actual losses, AtomicPark argues that this is the only type of damages that could be awarded. *See* Mot. at 6 ("Coremetrics' damage recovery, if it prevails in the liability phase of this case, should be measured by its actual losses, if any, from AtomicPark's breach."). Coremetrics argues that "[l]imiting Coremetrics' recovery to out-of-pocket damages would be contrary to well-settled contract law, whether New York or California contract law is applied." *See* Opp'n at 13. It contends it is entitled to damages measured by benefit of the bargain.

## IV.   DISCUSSION

Before addressing the merits of the parties' arguments above, the Court notes that it is unclear which state's substantive law governs the parties' contract here. As mentioned above, the contract contains a choice-of-law provision pointing to the application of New York law. However,

4

whether the parties' choice of New York law is enforceable depends on the choice-of-law rules of the forum, *i.e.*, California. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a district court in a diversity case must apply the choice-of-law rules of the state in which it sits). That being said, the parties have only made arguments as to whether New York or California law applies and not, for example, whether Wisconsin (where AtomicPark is incorporated and has its principal place of business) law applies. Therefore, this Court will only consider the application of New York or California law, and finds that, under either state's law, the contract is unambiguous and does not bar Coremetrics from seeking lost profits as a measure of direct damages.

A.   <u>The Limitations on Damages Clause is Unambiguous</u>

Addressing the issue of lost profits damages first, the Court must now interpret the Limitations on Damages clause to decide whether the contract bars Coremetrics from recovering lost profits for direct damages. Whether language in a contract is ambiguous is a question of law to be answered by the court. *See Bethlehem Steel Co. v. Turner Const. Co.*, 2 N.Y.2d 456, 460 (1957) (stating that, "where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law and no trial is necessary to determine the legal effect of the contract"); *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 904 (1986) ("Whether language in a contract is ambiguous is a question of law."). Interpretation of an unambiguous contract is also a question of law. *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.*, 25 N.Y.2d 535, 540 (1969) (stating that "the construction of a plain and unambiguous contract is for the court to pass on[.]"); *Abifadel v. Cigna Ins. Co.*, 8 Cal.App. 4th 145, 159 (Cal.App. 2d Dist.1992) ("The interpretation of a contract is a question of law when the contract terms are unambiguous."). During oral argument, counsel for Coremetrics and AtomicPark both stated that interpretation of a contract, regardless of whether it is ambiguous or unambiguous, is a question for the court. While it is true that interpretation of an unambiguous contract is a question of law, the Court notes that the interpretation of an ambiguous contract which requires consideration of extrinsic evidence is a question of fact for the jury. *See State v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (1985) ("If . . . the language in the insurance contract is ambiguous and susceptible of two reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and

the resolution of the ambiguity is for the trier of fact."); *Abifadel*, 8 Cal. App. 4th at 159 ("The interpretation of a contract is a question of law when the contract terms are unambiguous. However, when extrinsic evidence is required to determine the intent of the parties to the contract, the interpretation becomes a question of fact for the trier of fact.").

With these principles in mind, the Court finds that the Limitations on Damages clause is unambiguous and contemplates a bar on recovery of indirect damages, not the direct damages Coremetrics seeks here. The clause reads "In no event shall either party be liable for any indirect, incidental, special or consequential damages, **including** without limitation damages for loss of profits . . . ." (emphasis added.). A reasonable jury, after having read this clause, could only conclude that Coremetrics and AtomicPark intended to bar recovery of indirect damages, of which lost profits is just one of several possible measures. Under the plain reading of this provision, "loss of profits" is referenced only as a subset or species of indirect damages. That the Limitations on Damages clause bars only indirect damages is reinforced by the second sentence of Paragraph 8(b) of the Master Services Terms and Conditions ("Terms and Conditions"), which imposes a limit on liability for damages except for breaches of Paragraph 3, 4, 6, or 9 of the Terms and Conditions. Paragraph 3 provides that "[i]f Coremetrics has not received payment within said thirty (30) day period, then Coremetrics may declare Client to be in material breach of the Agreement." *See* Mot., Ex. 3. Thus, the entirety of Paragraph 8(b) and its limitations on damages addresses situations other than the conventional claim for breach of contract asserted here.

Moreover, the Limitations on Damages clause plainly incorporates the longstanding and deeply-rooted rule of *Hadley v. Baxendale*. 9 Ex. 341, 156 Eng. Rep. 145 (1854), which provides that recovery for breach of contract should compensate the non-breaching party for damages which naturally arise out of the breach and which were within the reasonable contemplation of the parties at the time the contract was formed, *i.e.* direct damages. That rule is recognized under New York and California law. *See Goodstein Constr. Corp. v. City of New York*, 80 N.Y.2d 366, 374 (1992) ("Under the accepted rule of *Hadley v Baxendale* . . . it must be shown 'that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made[.]" (citations omitted); Cal. Civ. Code § 3300 ("For the breach of an obligation arising from contract,

the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.").

The Court reaches its conclusion -- that the Limitations on Damages clause is unambiguous and does not by itself bar recovery of direct damages as a matter of law -- despite AtomicPark's proffer of extrinsic evidence to prove otherwise. In support of its argument that the parties intended the Limitations on Damages clause to bar recovery of lost profits for direct damages, AtomicPark offered extrinsic evidence in the form of the declaration of AtomicPark's president, Anthony Boldin ("the Declaration."). Mr. Boldin stated that "I did not believe that AtomicPark would be responsible for Coremetrics [sic] 'lost profits' by not going forward with the contract, as I noted language in the Marketforce Services Agreement that specifically said (in large print) that neither party would be responsible for the other's lost profits in the event of a breach or a dispute." *See* Boldin Decl. ¶ 6. For the following reasons, the Court finds that the Declaration is inadmissible extrinsic evidence under both New York and California law and therefore irrelevant to the interpretation of the contract.

1.  New York Law on Extrinsic Evidence

Under New York law, "extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face." *W.W.W. Associates, Inc.*, 77 N.Y. 2d at 163. Here, since the Limitations on Damages clause unambiguously bars recovery of indirect damages for the reasons already stated, the Declaration is not admissible to prove that the clause was intended instead to bar direct damages.

2.  California Law on Extrinsic Evidence

Under California law, a court must consider all credible extrinsic evidence to determine whether, in light of all the circumstances, the contract is fairly susceptible of more than one interpretation. *See Pacific Gas & Elec.*, 69 Cal. 2d 33, 39, 41 (1968); *see also Tahoe National Bank v. Phillips*, 4 Cal. 3d 11, 22 (1971) (citing *Pacific Gas & Electric* and stating that "in most cases, extrinsic evidence must be admitted provisionally in order that the court may determine if that evidence is relevant to establish an interpretation of the instrument to which it is reasonably

7

susceptible."). If, after such provisional consideration, the court finds that the contract *is* fairly susceptible of more than one interpretation, the extrinsic evidence is admitted and interpretation of the contract is a question of fact for the jury. *Abifadel*, 8 Cal. App. 4th at 159.

Applying California's two-step process here, the Court finds the Declaration fails both stages of the analysis. First, as a threshold issue, the Declaration is not *credible* extrinsic evidence as required under *Pacific Gas & Electric* because although Mr. Boldin states his belief that AtomicPark would not be responsible for Coremetrics' "lost profits" if AtomicPark breached the contract, there is no evidence showing that Mr. Boldin communicated his belief to Coremetrics. *See Pacific Gas & Electric*, 69 Cal. 2d at 39-40 ("Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties."); *Brant v. California Dairies, Inc.*, 4 Cal. 2d 128, 133 (1935) (finding, in pre-*Pacific Gas & Electric* case, that defendant's testimony as to his personal belief of what contract meant was "incompetent and inadmissible under the parol evidence rule" absent fraud or mistake); *Allen v. Smith*, 94 Cal. App. 4th 1270, 1272 (Cal. App. 4th Dist. 2002) ("Contract formation is governed by objective manifestations, not the subjective intent of any individual involved"); *Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.*, 205 Cal. App. 3d. 442, 457 (Cal. App. 2d Dist. 1988) (agreeing with trial court that defendant's subjective, undisclosed intent was immaterial to interpretation of contract). Since there is no evidence that Mr. Boldin communicated his belief to Coremetrics, and because California law deems a party's subjective, undisclosed intent immaterial to the process of contract interpretation, the Declaration is not credible extrinsic evidence having any material bearing on the Court's analysis here.

Even if the Declaration was found to be credible extrinsic evidence, and the Court was therefore required under *Pacific Gas & Electric* to consider it provisionally to ascertain whether the contract is fairly susceptible of more than one meaning, the Court's conclusion -- that the only reasonable interpretation of the Limitations on Damages clause is that the parties intended to bar recovery of indirect, not direct, damages -- does not change. As already discussed, the *Hadley* distinction between direct damages (which are typically recoverable) and indirect damages (which are typically not recoverable) is deeply-rooted in our common law. The language of the contract is

1  plain. Therefore, the interpretation proffered by Mr. Boldin's declaration -- that a limitation on
2  *indirect* damages could be reasonably interpreted to also mean a limitation on *direct* damages -- is
3  not one to which the contract here is fairly susceptible. It would be nonsensical to conclude, as
4  AtomicPark would have it, that the parties intended to bar recovery of lost profits for direct
5  damages. If that were the case, and Coremetrics *had* rendered services to AtomicPark and
6  AtomicPark never paid for them, Coremetrics could then be contractually barred from recovering its
7  lost profits. Thus, even provisionally considering the Declaration, the Limitations on Damages
8  clause is fairly susceptible to only one meaning: it is a bar on indirect, not direct, damages.

9       As a final matter, the Court notes that after the November 22, 2005 hearing on this motion,
10 AtomicPark filed a post-hearing memorandum arguing that "[t]he question then is whether the
11 contract is reasonably susceptible of more than one meaning when viewed from the perspective of a
12 reasonable objective business person in AtomicPark's shoes, i.e., can it reasonably be read to
13 exclude lost profits damages under one circumstance but not to exclude them under another?" *See*
14 Post-Hearing Mem. at 3 ("PHM"). Coremetrics filed a response objecting to AtomicPark's
15 unauthorized filing of a PHM. *See* Plaintiff's Response to Defendant's Post-Hearing Mem., Docket
16 No. 75. The Court will not consider AtomicPark's PHM, which was submitted without prior
17 approval from this Court, because it was filed in violation of Civil Local Rule 7-3(d), which
18 provides that "once a reply is filed, no additional memoranda, papers or letters may be filed without
19 prior Court approval."[3] Even if the Court were to consider the PHM, AtomicPark cites no authority
20 in support of its contention that a "reasonable objective business person" standard should apply in
21 this case. And even if such a standard were to apply, the Court's conclusion -- that Mr. Boldin's
22 interpretation of the Limitations on Damages clause is not one to which the contract is fairly
23 susceptible -- would remain unchanged because Mr. Boldin's subjective belief, as expressed in

---

[3] Rule 7-3(d) does permit counsel to submit supplementary material"[b]efore the noticed hearing date [to] bring to the Court's attention a relevant judicial opinion published after the date the opposition or reply was filed by serving and filing a Statement of Recent Decision, containing a citation to and providing a copy of the new opinion -- without argument." However, AtomicPark's post-hearing memorandum does not fall within this category of permitted supplementary material.

9

1  paragraph six of the Declaration, is objectively *un*reasonable in light of the longstanding rule of
2  *Hadley*.

3  B.       Summary Judgment on the Correct Measure of Damages is Inappropriate

4  Next, the Court must decide whether Coremetrics is limited to recovery of actual losses in
5  this case.  For the reasons already stated, the Limitations on Damages clause does not bar recovery
6  of lost profits for direct damages.  AtomicPark cites no authority prohibiting Coremetrics from
7  recovering the benefit of the bargain as opposed to actual outlay expenditures. *See Goodstein*
8  *Constr. Corp.*, 80 N.Y.2d at 373 ("Contract damages are ordinarily intended to give the injured party
9  the benefit of the bargain by awarding a sum of money that will, to the extent possible, put that party
10 in as good a position as it would have been in had the contract been performed."); *KGM Harvesting*
11 *Co. v. Fresh Network,* 36 Cal.App.4th 376, 382 (Cal.App.6th Dist.1995) ("The basic premise of
12 contract law is to effectuate the expectations of the parties to the agreement, to give them the
13 'benefit of the bargain' they struck when they entered into the agreement.").  Depending on the
14 particular findings of fact, a reasonable jury could decide to award lost profits *or* actual damages.
15 Moreover, in response to AtomicPark's contention that Coremetrics suffered no damage because
16 Coremetrics was "exceptionally busy" with other clients, Coremetrics has submitted evidence that it
17 was willing at all times to provide the contracted services to AtomicPark and had the resources and
18 capacity to do so.  *See* Resnick Decl. ¶ 3.  Thus, there is a disputed issue of material fact on this
19 point.  Therefore, summary judgment on the correct measure of damages is inappropriate.

20 However, the Court notes that the full contract price of $101,000 is *not* the correct measure
21 of damages here. Coremetrics argues that it is entitled to recover the contract price because it
22 expected to receive $101,000 from this transaction and, according to the Restatement Second of
23 Contracts, "the goal of contract damages is to make the non-breaching party whole by providing
24 them with their expectation damages." *See* Opp'n at 12.  The Court rejects this argument because it
25 fails to recognize that by awarding Coremetrics the full contract price without also deducting
26 expenses saved as a result of AtomicPark's breach, Coremetrics would be made more than whole;
27 Coremetrics would recover more money than it could have expected to make had the contract been
28 fully performed.  *See* Restatement Second of Contracts § 344 (defining "expectation interest" as the

Case 3:04-cv-00222-EMC Document 76 Filed 12/07/05 Page 11 of 11

plaintiff's "interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed[.]"). Had the contract been performed, Coremetrics would have incurred some costs; those costs need to be accounted for in determining lost profits.

Therefore, the most Coremetrics would be entitled to recover as damages here would be its lost profits, measured by the difference between the contract price and the expenses Coremetrics would have incurred had it performed. At oral argument, counsel for Coremetrics stated that it had not yet disclosed to AtomicPark its lost profits damage calculation pursuant to its obligation to do so under Rule 26(a)(1)(C) of the Federal Rules of Civil Procedure. To the extent this Rule 26 disclosure has not been made, Coremetrics is hereby ordered to make such disclosure within twenty days of the date of this order.

## V. CONCLUSION

For the foregoing reasons, the Court denies AtomicPark's motion for partial summary judgment on the issue of damages. A genuine dispute exists in this case as to the correct measure of damages. Furthermore, Coremetrics must disclose its lost profits damages calculation to AtomicPark pursuant to Rule 26(a)(1)(C) within 20 days.

This order disposes of Docket No. 58.

IT IS SO ORDERED.

Dated: December 7, 2005

EDWARD M. CHEN
United States Magistrate Judge